

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

LEWIS LYONS,

    Petitioner,

v.                              Civil Action No.3:08CV342

U.S. PAROLE COMM.,

    Respondent.

MEMORANDUM OPINION

Lewis Lyons, a District of Columbia ("D.C.") offender imprisoned in the Federal Correctional Center at Petersburg, brings this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Respondent has filed a motion to dismiss, to which Lyons has responded.

I. LYONS'S CLAIMS

Lyons challenges the United States Parole Commission's ("USPC") decision to deny him parole at a rehearing on November 28, 2007. Lyons makes the following claims:

    Claim 1        The USPC violated the Ex Post Facto clause[1] by subjecting Lyons to a more severe punishment than authorized by law at the time of his offense; and,

    Claim 2       The USPC exceeded its authority by:
                      (A)  applying Federal regulations; and,
                      (B)  by "double counting," using his offense to both calculate

---

[1] "No Bill of Attainder or ex post facto Law shall be passed." U.S. Const. art. 1, § 9, cl. 3.

his parole suitability under the guidelines and to depart from them.

Lyons requests the Court order a parole rehearing or, in the alternative, order his immediate release. Lyons also requests "fair and just compensation for violating his constitutional rights." (Mem. in Supp. of Writ of Habeas Corpus 14.) Monetary damages are not available in a habeas action. See McKinney-Bey v. Hawk-Sawyer, 69 F. App'x 113 (4th Cir. 2003) (No. 03-6455), available at 2003 WL 21236189, *1. His claims for monetary damages will therefore be DISMISSED.

Lyons also implies that he seeks to proceed under the Equal Protection Clause.[2] Lyons, however, fails to explain how the Equal Protection Clause is implicated. Lyons's Equal Protection claim will be DISMISSED.

## II. PROCEDURAL HISTORY

On August 17, 1995, the Superior Court of the District of Columbia convicted Lyons of second degree murder for a shooting that occurred on March 12, 1988.[3] Lyons was sentenced to

---

[2] "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

[3] Lyons successfully appealed his original conviction for first degree murder, then pleaded guilty to second degree murder. (Respt.'s Mot. to Dismiss Ex. C 1.)

2

imprisonment for a term ranging from fifteen years to life. (Respt.'s Mot. to Dismiss Ex. A.)

On April 19, 1999, the USPC held an initial parole hearing. On May 25, 1999, the USPC denied parole, in accordance with the guidelines then in effect.[4] At a July 18, 2001 rehearing, a USPC hearing examiner calculated that Lyons had served 143 months and that the upper limit of his guidelines range was 145 months under the current guidelines. On January 4, 2002, the USPC denied parole. The USPC determined that an above-guidelines term of incarceration was warranted because:

> your offense was particularly aggravated in that you went to your car; obtained a weapon and shot the unarmed victim at point blank range in the chest. Your willingness to take a person's life without provocation makes you a more serious risk to the general community if released at this time.

(Respt.'s Mot. to Dismiss Ex. G.) On December 8, 2004, the USPC again denied parole, using the same reasoning to justify its decision. (Respt.'s Mot. to Dismiss Ex. I.)

The USPC held a rehearing on November 6, 2007. Lyons's case manager described him as an exemplary prisoner. Lyons had not committed any institutional infractions since 1994. The hearing examiner, noting that Lyons had "consistently participated in

---

[4] At the initial hearing, the USPC applied interim guidelines that were in effect from 1998 until 2000. See 28 C.F.R. § 2.80(a)(5); see also Fletcher v. Reilly, 433 F.3d 867, 871-72 (D.C. Cir. 2006) (summarizing history of parole regulations for D.C. Code offenders in federal custody).

meaningful programs" and completed seven programs since his prior hearing, recommended a Superior Program Achievement Award. (Respt.'s Mot. to Dismiss Ex. J 2.) The Award resulted in a twelve-month reduction in the guidelines range. With the benefit of this reduction, and a correction to the guideline range, the hearing examiner determined that Lyons had a total guideline range of 121-127 months. The hearing examiner recommended parole effective on April 16, 2008, at which time Lyons would have served 224 months.

The Executive Reviewer did not accept the hearing examiner's recommendation. He explained the relevant circumstances in an internal memorandum:

> 1-subject was in a store with his girlfriend. He was not in view of her but it was reported to him that two men in the store were messing with his girlfriend.
> 2- the two men had left the store and our subject concluded his purchase and left after them.
> 3-these men met in the parking lot and a verbal conflict ensued.
> 4-our subject got a gun from a car. These two victims were unarmed.
> 5-our subject walked toward the two men and fired a shot in their direction. The witness ran.
> 6-the victim was in a car and our subject walked to the driver's side, opened the door and began to hit the victim with the gun.
> 7-our subject then shot the victim in the chest. This shot killed the victim.
> 8-the subject was originally charged with Murder I but was allowed to plead guilty to a reduced charge of Murder II and he was sentenced to Life.

(Respt.'s Mot. to Dismiss Ex. J 3-4.)  On November 28, 2007, the USPC denied parole, explaining that:

> the gravity of the offense is sufficient to warrant an upward departure from the guidelines and a denial of parole.  You went to your car, obtained a weapon, fired the weapon at the unarmed victim and witness, then proceeded to shoot the victim in the chest at point blank range and kill him.  Further, your willingness to kill a person without provocation makes you a more serious risk than indicated by your parole guidelines and a continued risk to the community if released at this time.

(Respt.'s Mot. to Dismiss Ex. K.)

### III.  EX POST FACTO ANALYSIS

The United States Constitution prohibits federal and state governments from passing any Ex Post Facto law.  U.S. Const. art. I, § 9, cl. 3; id. art. I, § 10, cl. 1.  An Ex Post Facto law is "'any statute which . . . makes more burdensome the punishment for a crime, after its commission.'"  Collins v. Youngblood, 497 U.S. 37, 42 (1990) (quoting Beazell v. Ohio, 269 U.S. 167, 169-70 (1925)).  "To fall within the ex post facto prohibition, a law must be retrospective-that is, 'it must apply to events occurring before its enactment'-and it 'must disadvantage the offender affected by it . . . .'"  Lynce v. Mathis, 519 U.S. 433, 441 (1997) (quoting Weaver v. Graham, 450 U.S. 24, 29 (1981)).  Changes to parole laws that create "a sufficient risk of increasing the measure of punishment attached to the covered crimes" violate the Ex Post

Facto clause.  Cal. Dept. of Corr. v. Morales, 514 U.S. 499, 509 (1995).

The statute pursuant to which parole regulations for D.C. offenders are promulgated has not changed since Lyons's offense. It provides that:

> Whenever it shall appear to the Board of Parole that there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, that his release is not incompatible with the welfare of society, and that he has served the minimum sentence imposed or the prescribed portion of his sentence, as the case may be, the Board may authorize his release on parole upon such terms and conditions as the Board shall from time to time prescribe.

D.C. Code § 24-404(a).  The Court of Appeals for the District of Columbia has held that this statute "leaves it to the [D.C. Parole] Board to determine whether the prisoner is likely to be a responsible citizen if he is returned to the community and whether release on parole is consistent with public safety."  White v. Hyman, 647 A.2d 1175, 1179 (D.C. App. 1994).  The D.C. Board of Parole, however, has been abolished; its authority to interpret and execute D.C. Law was transferred to the USPC.  D.C. Code § 24-131.

Lyons's Ex Post Facto argument is not based directly on the changes to the D.C. Code.  Instead, Lyons argues that his parole eligibility should be governed by the District of Columbia parole guidelines that were effective when he committed his crime. Specifically, Lyons claims that the parole regulations then in

6

effect ("the 1987 Guidelines") did not authorize the District of Columbia Board of Parole ("D.C. Parole Board") to consider the nature and circumstances of his crime in determining that he is a greater risk for parole than reflected by his point score. Lyons also argues that the 1987 Guidelines did not authorize the board to deny parole based on Lyons's need to account for his crimes.

The Supreme Court has found that a retroactively applied parole regulation or guideline violates the Ex Post Facto Clause if it "creates a significant risk of prolonging [an inmate's] incarceration." Garner v. Jones, 529 U.S. 244, 251 (2000). The United States Court of Appeals for the Fourth Circuit has interpreted Garner to apply only to parole regulations that are legislative rules rather than merely changes in "an administrative policy that was in effect at the time of a criminal's underlying offenses." Warren v. Baskerville, 233 F.3d 204, 207 (4th Cir. 2000) (emphasis added) (citing United States v. Ellen, 961 F.2d 462, 465 (4th Cir. 1992); Prater v. U.S. Parole Comm'n, 802 F.2d 948, 951 (7th Cir. 1986)); see also United States v. Restrepo-Suares, 516 F. Supp. 2d 112, 117 (D.D.C. 2007) (discussing circuit split on whether Garner applies to all parole regulations or only legislative rules). Legislative rules "ha[ve] the force of law." Jerri's Ceramic Arts, Inc. v. Consumer Prod. Safety Comm'n, 874 F.2d 205, 207 (4th Cir. 1989) (citing cases). Legislative rules stand in contrast with interpretive rules, which do not implicate

the Ex Post Facto clause. Ellen, 961 F.2d at 465. Interpretive rules "'simply state what the administrative agency thinks the statute means, and only 'remind' affected parties of existing duties.'" Id. (quoting Jerri's Ceramic Arts, Inc., 874 F.2d at 207). They are "guides, and not laws: guides may be discarded where circumstances require; laws may not." Prater, 802 F.2d at 954 (internal quotations omitted). For example, in Prater, the fact that the USPC retained the discretion to overrule the federal parole guidelines and grant or deny parole led the Seventh Circuit to conclude that the parole guidelines did not have the force of law. Id.

Respondent correctly argues that the 1987 regulations do not have the force of law. Although the Regulations describe a method by which the Parole Board determined whether an offender should be paroled, they also provide that:

> The Board may, in unusual circumstances, waive the [Salient Factor Score] and the pre and post incarceration factors set forth in this chapter to grant or deny parole to a parole candidate. In that case, the Board shall specify in writing those factors which it used to depart from the strict application of the provisions of this chapter.

D.C. Mun. Reg. § 204.22. The Court of Appeals for the District of Columbia has interpreted the relevant statutes and regulations to create a parole system "grounded in the exercise of discretion by the Board, with a numerical system to aid in the exercise of that discretion." McRae v. Hyman, 667 A.2d 1356, 1360-61 (D.C. App.

8

1995); see also Ellis v. District of Columbia, 84 F.3d 1413, 1420 (D.C. Cir. 1996) (adopting conclusion of D.C. Court of Appeals that "parole is never 'required after the Board determines that the necessary prerequisites exist") (citation omitted). Because the 1987 Guidelines and the USPC's regulations lack the force of law, Lyons's Ex Post Facto claim must fail. See Moore v. O'Brien, No. 7:06CV00515, 2007 WL 1412934, at *3 (W.D. Va. May 10, 2007). Lyons's Ex Post Facto claim will be DISMISSED.

## IV. THE SCOPE OF THE USPC'S AUTHORITY

Lyons claims that the USPC has impermissibly applied a mix of federal and D.C. regulations to parole candidates. In support of his argument, Lyons cites to cases which held that the USPC was required to apply D.C. parole laws and regulations.[5] Lyons's authority all predates the dissolution of the D.C. Parole Board. The United States Parole Commission assumed all of the D.C. Parole Board's duties in 1998. While Lyons admits that the D.C. law now authorizes the USPC to make rules regarding parole for D.C. Code offenders, he maintains that it also requires that "those powers be excercised [sic] within the precepts of D.C. parole law and regulations, which remain intact . . . ." (Mem. in Supp. of Habeas Pet. 3). Lyons contends that the prior D.C. parole scheme excluded

---

[5] See, e.g., Walker v. Luther, 830 F.2d 1208 (2d Cir. 1987); Ashby-Bey v. Meese, 821 F.2d 1288 (7th Cir. 1987); Cosgrove v. Thornburgh, 703 F.Supp. 995, 1004 n.6 (D.D.C. 1988).

9

offender accountability from the parole decision, and that federal regulations that permit the USPC to consider the need for punishment, see 28 C.F.R. § 2.73(b), are therefore invalid.

Lyons's argument is without merit. D.C. law clearly grants the USPC "exclusive authority to amend or supplement any regulation interpreting or implementing the parole laws of the District of Columbia." D.C. Code § 24-131(a)(1); see Trice v. Reilly, No. 3:06cv078, 2006 WL 5644844, at *5 (E.D. Va. Nov. 13, 2006). Additionally, although offense accountability was not an enumerated factor, the D.C. parole scheme allowed for the denial of parole based upon unlisted factors, including the nature of the offense. See Ellis v. District of Columbia, 84 F.3d 1413, 1419 (D.C. Cir. 1996); Ford v. U.S. Parole Comm'n, No. 02-5223, 2002 WL 31246899 (D.C. Cir. Oct. 2, 2002); Washington v. Williams, No. 01-7159, 2002 WL 1364293 (D.C. Cir. May 24, 2002). Accordingly, Claim 2(A) will be DISMISSED.

Finally, Lyons argues that the USPC "double counted" by using the same criteria to both establish the parole guidelines and justify a departure from them. See Romano v. Baer, 805 F.2d 268, 271 (7th Cir. 1986). Here, the USPC determined that the circumstances of Lyons's crime demonstrated premeditation and that he had fired a shot in the direction of the victim and witness before killing the victim without provocation. The USPC was allowed to consider these factors, which were not taken into

10

account by the guidelines. See LaPlaca v. Clarke, 664 F. Supp. 991, 992 (E.D. Va. 1987) ("[t]he nature and chronology of an offense may be taken into account to justify a decision above the guidelines even though the offense was counted in a determination of . . . the salient factor score") (citation omitted). Claim 2(B) will be DISMISSED.

## V. CONCLUSION

In light of the foregoing, Respondent's motion to dismiss (Docket No. 7) will be GRANTED. The petition for a writ of habeas corpus will be DENIED, and the action will be DISMISSED.

The Clerk is DIRECTED to mail a copy of the Memorandum Opinion to Lyons and counsel of record.

And it is so ORDERED.

                                                            /s/        REP
                                       Robert E. Payne
                                       Senior United States District Judge

Date: January 27, 2009
Richmond, Virginia